# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**CARL SLATE,**

        **Plaintiff,**

**v.**                                                                         **Case 2:13-cv-02118-STA-cgc**

**MASSACHUSETTS MUTUAL**
**LIFE INSURANCE COMPANY,**

        **Defendant.**

## ORDER ON DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY AND RECORDS OF KENNETH CLENIN, D.C.

Before the Court is Defendant Massachusetts Mutual Life Insurance Company's Motion to Exclude the Testimony and Records of Kenneth Clenin, D.C. ("Dr. Clenin"). (Docket Entry "D.E." #45). The instant motion was referred to the United States Magistrate Judge for determination. (D.E. #46). On September 15, 2014, the Magistrate Judge held a hearing on the instant motion. For the reasons set forth herein, Dr. Clenin shall not be permitted to testify as an expert witness pursuant to Rule 702.

## I. Introduction

This case arises from Defendant's cancellation of coverage under Plaintiff's disability insurance policy, Number 8,173,1665 ("Policy"), which was issued in 2000. (Am. Compl. ¶¶ 1-24). Following the issuance of his Policy, Plaintiff, who was then employed as a financial systems consultant, ruptured a cervical disc—an injury that required surgery but ultimately did not resolve his symptoms. (Am. Compl. ¶¶ 8-13). On March 4, 2005, Plaintiff began to be treated by Dr.

1

Clenin to manage his continued symptoms. (Am. Compl. ¶ 13; Clenin Deposition, Vol. I, at 11:13-16, filed at D.E. #49-1).

In 2009, Plaintiff alleges that Dr. Clenin, along with another physician, informed him that his job requirements, including frequent air travel, extended work hours, and the "position he had to hold his head" while working as a financial systems consultant "were bad for his condition and worsening his condition." (Am. Compl. ¶¶ 10-11, 14). Thus, Plaintiff, in consultation with his medical provider about "what type of job he could do," "went back to school to become HVAC trained" and began this new job that "does not affect his neck" but earns a fraction of his prior salary. (*Id*. ¶¶ 15-19). On or about March 19, 2010, Plaintiff made a claim under the Policy. (Answer ¶ 3). Initially, Defendant "began paying under the loss income portion of the policy" but has since "cancelled payment." (*Id*. ¶¶ 20-21). Plaintiff asserts claims of breach of contract and bad faith failure to pay. (*Id*. ¶¶ 25-32).

On August 11, 2010, Dr. Clenin provided medical records to Defendant as part of the claims process ("MassMutual Production"). (Clenin Dep., Vol. I, Exh. 15). After this case was filed, Plaintiff provided his Rule 26(a) Initial Disclosures listing Dr. Clenin as a treating chiropractor. (Plaintiff's Rule 26(a) Initial Disclosures, filed at D.E. #43–4). On December 5, 2013, Defendant subpoenaed "[a]ny and all" of Plaintiff's medical records from Dr. Clenin. (Clenin Dep., Vol. I, Exh. 28, filed at D.E. #42-4). On February 3, 2014, Dr. Clenin responded with sixty-four pages of documents ("February Production"). (*Id*.) These documents did not include any records from Dr. Clenin's treatment of Plaintiff prior to March 24, 2010. (*See id*.; Clenin Dep., Vol. I, Exh. 29, filed at D.E. #42-4). After Defendant questioned the completeness of the February Production, Dr. Clenin produced a second set of medical records containing fifty-seven pages of documents. ("April

Production"). (Clenin Dep., Vol. I, Exh. 29). Though the April Production contained less pages than the February Production, the April Production contained notes not only from on and after March 24, 2010 but also notes dating back to March 2005. (*See id.*)

On May 15, 2014, Dr. Clenin was deposed and brought with him a third set of medical records that he relied upon during the deposition ("May Production"). (Clenin Dep., Vol. I., Exhs. 13-18). Defendant alleges that, on or about June 13, 2014, in response to its request that he fully comply with the prior subpoena, Dr. Clenin produced a disc containing 164 pages of records ("June Production"). (Clenin Dep., Vol. II, filed at D.E. #43-2 at 71). On July 17, 2014, Dr. Clenin's deposition was completed. (Clenin Dep., Vol. II, filed at D.E. #49-2). On that date, Dr. Clenin produced eight pages of "travel cards" that Defendant alleges had not been previously been produced. (Clenin Dep., Vol. II., Exh. 30, filed at #43-2 at 59). Defendant alleges that, on July 17, 2014, the record custodian for Dr. Clenin's practice produced another set of records containing 491 pages ("July Production").[1]

## II. Analysis

### A. *Failure to Disclose Dr. Clenin as Expert Witness*

First, Defendant asserts that Plaintiff failed to disclose Dr. Clenin and his opinions pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, which states, in pertinent part, as follows:

> **(A) *In General*.** In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
>
> . . .

---

[1] The Court was unable to locate the July Production in the record, as the copy of Tonja Harmon's deposition in the Court's record, to which the July Production was listed as Exhibit 1, does not contain any exhibits. (*See* D.E. #43-3).

**(C)** *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

> **(I)** the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> **(ii)** a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2).[2] As a result of Plaintiff's alleged failure to disclose Dr. Clenin, Defendant argues that his testimony should be excluded under Rule 37(c)(1), which provides in pertinent part as follows:

> **(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**
>
> **(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
>> **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>
>> **(B)** may inform the jury of the party's failure; and
>>
>> **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(I)-(vi).

Fed. R. Civ. P. 37(c)(1).

Upon review, Plaintiff's Rule 26(a) Initial Disclosures set forth various disclosures under

---

[2] A witness must only provide a written report if he "is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). It is undisputed that Dr. Clenin would not have been required to provide such a report.

4

Rule 26(a)(1)(A)(I)-(iv). Plaintiff also attached a spreadsheet disclosing the identities of various individuals under Rule 26(a)(1)(A)(ii)-(iii), their contact telephone numbers, and a one-line statement of information on each person. Pertaining to this motion, Plaintiff disclosed "Medical Contacts with first hand knowledge of [his] condition," including the following entry regarding Dr. Clenin:

> Dr Ken Clenin DC       901-683-5971       Chiropractor since 2005 to present

Plaintiff stated that he sought to disclose Dr. Clenin and the other "medical providers as experts as contemplated by Rule 26(a)(2)"; however, Plaintiff did not disclose either the subject matter or summary of Dr. Clenin's expected testimony.

Accordingly, the Court concludes that Plaintiff failed to comply with Rule 26(a)(2)(C)(ii), which requires the disclosure of "the subject matter on which the witness is expected to present evidence" and a "summary of the facts and opinions to which the witness is expected to testify." For this reason alone, the Court may order that the party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c)(1). However, the Court will continue to consider whether Dr. Clenin's testimony satisfies Rule 702 of the Federal Rules of Evidence.

### B. Reliability and Relevance of Dr. Clenin's Testimony

Even assuming, *arguendo*, that Plaintiff had properly disclosed Dr. Clenin as a testifying expert and had complied with Rule 26(a)(2)(C)(ii), Rule 702 of the Federal Rules of Evidence requires as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evidence 702. In sum, an expert's testimony must rest "on a reliable foundation and [be] relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993).

Upon review, Dr. Clenin testified that he relied upon his "notes" as the basis for his deposition. (Clenin Dep., Vol. I, at 114:16-18; *see id.*, Exhs. 13-18). He did so to opine on Plaintiff's "subjective complaints of pain" over the nine years he treated him—a time during which Dr. Clenin saw on average three hundred patients per week. (Clenin Dep., Vol. I, at 11:13-16, 150:4-5 & 171:12-17). However, Defendant raises numerous questions regarding the reliability of Dr. Clenin's notes and, thus, his proffered expert testimony.

First, Defendant asserts that Dr. Clenin's records of his treatment of Plaintiff are not sufficiently reliable because he has created and produced multiple, inconsistent versions thereof. Defendant has provided various examples of these averred inconsistencies in the instant motion. (Def.'s Mot. to Exclude at 8-10). A review of the numerous iterations of Plaintiff's medical records demonstrates that, while key details were not included in the older versions of Dr. Clenin's records, the newer records frequently contain significant additional information. Certain date entries are also contradictory in the various productions. Ultimately, there are at least six different versions of the medical records that Dr. Clenin seeks to rely upon.

Second, Defendant asserts that Dr. Clenin's records are not sufficiently reliable because they

6

were not contemporaneously created. Specifically, Dr. Clenin explained that, as he is "working on the patient," he makes notes on what he refers to as a "travel card." (Clenin Dep., Vol. II, at 334:7-10; *see id.*, Exh. 30 ("Plaintiff's Travel Cards")). For the travel cards, Dr. Clenin utilizes his own method of shorthand that he refers to as "hieroglyphics" that only "mean something" to him. (*Id.* at 215:14-16 & Exh. 30). Only "diagnostic findings" are included on the travel cards. (*Id.* at 238:5-6). Dr. Clenin did not include "any of the descriptions of [Plaintiff's] job and his subjective complaints" on the travel card, and his "diagnosis is based on objective findings." (*Id.* at 323:13-324:8). For patients paying by cash, the travel cards were not transcribed unless the records were requested. (*Id.* at 322:17-323:7; Harmon Dep. at 30:10-31:2, 32:11-33:25). Thus, Plaintiff's travel cards were not transcribed from the dates of his treatments beginning in 2005 until Defendant requested the records in 2010 and then again on occasions in 2014 when Dr. Clenin provided further productions. (Clenin Dep., Vol. II at 322:17-323:7). For reasons that are not entirely clear, this process of attempting to ultimately transcribe medical records from the travel cards resulted in significant confusion, including "re-dictating" and "double dictation," and eventually resulted in various versions of the medical records produced to Defendant, as described above. (*Id.* at 297:23-298:2). Dr. Clenin further admits that, to generate certain portions of the ultimate records, he relied on "strictly recollection." (*Id.* at 293:3-6).

Third, Defendant asserts that Dr. Clenin's travel cards—which were the only contemporaneous record of Plaintiff's medical treatment—do not comply with the Rules of the Tennessee Board of Chiropractic Examiners. Specifically, as "chiropractic records are an integral part of the practice," a "chiropractic physician must cause to be created and cause to be maintained a chiropractic record for every patient whom he or she, and/or any of his or her professionally

7

licensed supervisees, performs services or provides professional consultation." Tenn. Comp. R. & Regs. 0260-02-.26(1)(a) & -.26(4)(a). The records should include all information "necessary to insure that a subsequent reviewing or treating chiropractic physician can both ascertain the basis for the diagnosis, treatment plan and outcomes, and provide continuity of care for the patient." *Id.* at 0260-02-.26(5)(d). It is "unprofessional and unethical" for a chiropractor not to keep "[a]dequate patient records" that are "legibly maintained." *Id.* at 0260-02-.22(2). Such recordkeeping is "a component of the standard of care and of minimal competency." *Id.* at 0260-02-.26(4)(a). Dr. Clenin admits that he had a "deficient note taking system in place" for cash patients, as he primarily kept those records "in the patient's interest and not meeting industry standards for causation of the symptoms" but instead just noting what he was "treating." (Clenin Dep., Vol. II, at 305:24-306:5).

The Court agrees with Defendant that Dr. Clenin's multiple iterations of Plaintiff's medical records—which he states serve as the basis for the reliability of his testimony—are not sufficiently reliable to permit him to testify as an expert pursuant to Rule 702 of the Federal Rules of Evidence. The travel cards, which are the initial and contemporaneous notes, are virtually illegible.[3] Further, the documents produced in the MassMutual Production and the February, April, May, June, and July productions contain inconsistencies, new entries, and information Dr. Clenin admits was based not on prior contemporaneous recordkeeping but upon his recollection years later. These new, multiple versions of records are especially concerning because Dr. Clenin has taken eight pages of travel cards, which covered Plaintiff's treatment from 2005 to 2014, and created by the Court's estimate at least 215 pages of records and by Defendant's estimate 788 pages of records. Given Dr. Clenin's

---

[3] The Court does not make any determination in this Order as to whether Dr. Clenin complied with the Rules of Tennessee Board of Chiropractic Examiners, as that is beyond the scope of the instant motion.

heavy patient load, the lengthy period of time over which he treated Plaintiff, and the lack of legible, contemporaneous notes, the Court finds that the medical records that Dr. Clenin states serve as the foundation for his expert testimony are not based upon a sufficiently reliable foundation to satisfy Rule 702 and *Daubert*.

Further, in addition the lack of a reliable foundation, an expert witnesses's testimony must be "relevant to the task at hand" to assist the "trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*,509 U.S. at 592 n.10. Because Plaintiff did not provide the required subject matter or summary of Dr. Clenin's testimony in his Rule 26(a) Initial Disclosures, it is difficult for the Court or the parties to speculate as to what role Plaintiff seeks that Dr. Clenin fulfill in accomplishing these objectives. At the hearing on the instant motion, Plaintiff stated that he wanted to rely on Dr. Clenin's medical treatment and his testimony as to biomechanical and ergonomical issues causing Plaintiff's continued symptoms. However, Dr. Clenin testifies on numerous occasions in his deposition that he did not consider causation to be a relevant issue when treating Plaintiff. (Clenin Dep., Vol. I at 152:10-155:9; Clenin Dep., Vol. II, at 258:12-16; 292:9-24; 294:6-295:1; 305:24-306:5; 331:13-24). Dr. Clenin testified that "whether you injured it . . . water skiing or snow skiing," whether you had a "fender bender yesterday and you have a headache . . . or you carried these heavy bags through the airport and it caused the same muscle group to spasm and you had a headache" is all irrelevant "if you're a cash patient because [he was] going to work on the problem and [the patient was] going to leave without a headache." (Clenin Dep., Vol. II at 294:6-295:1; 331:13-24). For cash patients, Dr. Clenin simply aims to "fix their complaint." (Clenin Dep., Vol. II at 258:12-16; *see also* Clenin Dep., Vol. I at 152:10-155:9). Simply put—to Dr. Clenin as to his cash patients, "causation is irrelevant." (Clenin Dep., Vol. II,

9

at 292:19). Thus, the Court concludes that, in addition to Dr. Clenin's lack of reliability under Rule 702 and *Daubert*, he does not proffer testimony that would be relevant to the issue of causation for which Plaintiff seeks to offer him. Accordingly, Dr. Clenin shall not be permitted to provide expert testimony on the issue of the cause, whether it be biomechanic, ergonomic, or otherwise, of Plaintiff's alleged occupational disability.

### III. Conclusion

For the reasons set forth herein, Defendant's Motion to Exclude the Testimony and Records of Kenneth Clenin, D.C. is GRANTED.

**DATED** this 19th day of September, 2014.

                                                      s/ Charmiane G. Claxton
                                                    CHARMIANE G. CLAXTON
                                                    UNITED STATES MAGISTRATE JUDGE